# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SONNIEL R. GIDARISINGH,

        Plaintiff,

        v.                            Case No. 04-C-38

GARY McCAUGHTRY, MARC CLEMENTS,
CAPTAIN STEVE SCHUELER, CAPTAIN O'DONOVAN,
CORRECTIONAL OFFICER KEMPFER,
CORRECTIONAL OFFICER ROELKE,
PHILIP KINGSTON, TIM DOUMA,
CAPTAIN JANEL NICKEL, COLLEEN JAMES,
CORRECTIONAL OFFICER LAMAR TOMAC,
CORRECTIONAL OFFICER PITZEN,
CORRECTIONAL OFFICER MILLARD, and
CORRECTIONAL OFFICER KOPFHAMER,

        Defendants.

---

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        The plaintiff, Sonniel R. Gidarisingh, who is incarcerated at the Columbia Correctional Institution (CCI), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis* on March 18, 2004. He alleges that his First, Fourth and Eighth Amendment rights have been violated. In addition, the plaintiff is proceeding on an intentional tort claim under Wisconsin Statute § 893.57. The defendants have filed a motion for summary judgment which will be granted in part and denied in part as discussed below.

### I. FACTUAL BACKGROUND

        On January 14, 2004, the plaintiff lodged his civil rights complaint against Matthew Franks, Gary McCaughtry, Marc Clements, Capt. Schueler, Capt. O'Donovan, CO Kempfer, CO Roelke, Philip Kingston, Tim Douma, Capt. Nickel, Colleen James, CO Tomac,

CO Pitzen, CO Millard, and CO Kopfhamer, and a Wisconsin tort law claim against defendants Pitzen, Millard and Kopfhamer. Later, Matthew Franks was terminated as a defendant and the plaintiff's official capacity claims against defendants McCaughtry, Clements, Schueler, Kingston, and Douma were dismissed. However, the plaintiff was allowed to proceed on the retaliation claims against defendants McCaughtry, Clements, Schueler, O'Donovan, Kempfer, Roelke, Kingston, Douma, Nickel, James, Tomac, Pitzen, Millard, and Kopfhamer. Also, the excessive force claims and Wisconsin tort law claims against defendants Pitzen, Millard and Kopfhamer were allowed to proceed along with the due process claims against defendants McCaughtry, Clements, Schueler, O'Donovan, Kempfer, Roelke, James, Tomac, and Pitzen.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When

the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once this initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or on conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

### III. RELEVANT UNDISPUTED FACTS

The facts at issue must be established through documents that ensure reliability and veracity, such as depositions, answers to interrogatories, admissions, and affidavits. *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). A prisoner plaintiff can demonstrate the veracity of a complaint by swearing under penalty of perjury that his statements are true. *See* 28 U.S.C. § 1746. If the complaint is sworn, it will be treated as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246

(7th Cir. 1996). Submissions which are unverified and unsworn cannot be considered affidavits for the purposes of summary judgment motions because these documents would not be admissible at trial. *See* Fed. R. Civ. P. 56 (c) and (e).

For this reason, the facts in this section are taken from the Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment and attached exhibits, as well as the defendants' affidavits and supporting exhibits. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (Inmate's verified response constituted competent evidence to rebut defendants' motion for summary judgment). The plaintiff's unsworn complaint cannot be considered as evidence.

The story behind this case begins July 29, 1998, when Matthew Sanville, an inmate at Waupun Correctional Institution (WCI), committed suicide. (Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment [Pl.'s Br.] at 2 ¶ 3) The plaintiff was living in the next cell at the time of inmate Sanville's death. (Pl.'s Br. at 2 ¶ 4) On March 16, 2002, the plaintiff received a letter from an attorney representing Sanville's family, requesting information about Sanville's last days at WCI. (Pl.'s Br. at 2-3 ¶ 5) Thereafter, the plaintiff participated in a deposition on April 5, 2002, against staff members in WCI's Segregation Unit. (Pl.'s Br. at 4 ¶ 10) He testified that inmate Sanville had not eaten for several days before his suicide and that Sanville had told WCI correctional officers that he was going to kill himself. (Pl.'s Ex. 4 at 14, 20-21) According to the plaintiff, the WCI staff knew about Sanville's problems and did nothing to help him. (*Id.* at 27)

On the day of the Sanville deposition, the plaintiff was released into the general population at approximately 8:00 a.m. (Pl.'s Br. at 3 ¶ 7) The deposition lasted from approximately 12:30 p.m. until about 2:00 p.m. (Pl.'s Br. at 4-5 ¶¶ 10,15-16) Immediately after the deposition, the plaintiff was returned to segregation. (Pl.'s Br. at 5-6

¶¶ 15-18)  After his return to segregation, the plaintiff was placed in Temporary Lock Up (TLU) pending an Administrative Confinement Hearing.  (Pl.'s Br. at 6 ¶ 19)

The defendants continued to retaliate against the plaintiff for giving his testimony.  (Pl.'s Br. at 7 ¶¶ 21-38, 97)  He was the victim of fabricated conduct reports, excessive force and denial of due process, and he believes the events described below are evidence of the defendants' retaliation.  In response, the defendants contend that their actions were not motivated by intent to retaliate or punish the plaintiff for his involvement in the Sanville lawsuit.  (Aff. Douma at 3, ¶¶ 11, 12; Aff. Pitzen at 3, ¶ 10)

### Kempfer Conduct Report

During breakfast on May 14, 2002, the plaintiff refused juice offered to him by corrections officer Kempfer.  (Pl.'s Br. at 8 ¶¶ 27-28)  The next day, the plaintiff received Conduct Report 1364858, which accused him of sticking his hand out of his cell trap and grabbing Kempfer's wrist. (Pl.'s Ex. 9)  The plaintiff was charged with violating Wis. Admin. Code DOC §§ 303.28, disruptive conduct, and 303.12, battery.  (*Id.*)  The plaintiff alleges that the underlying conduct report was fabricated because he did not reach into the trap or touch Kempfer, and that Kempfer walked away leaving the trap open.  (Pl.'s Br. at 8 ¶ 29)

On May 14, 2002, the plaintiff asked defendant Schueler to see and preserve videotapes of the plaintiff's cell during the incident alleged in Conduct Report 1364858. (Pl.'s Br. at 9 ¶ 32) Further, the plaintiff made a written request to defendant Clement to see and preserve the videotape for the purposes of his disciplinary hearing.  (Pl.'s Br. at 11 ¶ 38) Notably, the Disciplinary Hearing Committee found that there was no such videotape.  (Pl.'s Ex. 10)  On May 30, 2002, defendant O'Donovan found the plaintiff guilty of the disruptive conduct charge. (Pl.'s Br. at 14-15 ¶ 46)

### Roelke Conduct Report

On May 26, 2002, defendant Roelke, who was conducting showers, denied the plaintiff a shower. (Pl.'s Br. at 16 ¶ 50 and 18 ¶ 55) Several days later, the plaintiff was issued Conduct Report 1364876, which alleged that he was denied a shower because he told Roelke to "watch your back." (Pl.'s Ex. 17) The plaintiff denies making the threats, and alleges that he was denied breakfast earlier that day because Roelke was friends with a WCI staff member that the plaintiff testified against. (Pl.'s Br. at 17-18 ¶ 53) The plaintiff was charged with making threats in violation of Wis. Admin. Code § DOC 303.16. (*Id.*) On May 30, 2002, the plaintiff was found guilty of the Roelke Conduct Report. (Aff. Douma Ex. A at 3; Pl.'s Ex. 18)

### Transfer from WCI

On July 11, 2002, the plaintiff was transferred from WCI to CCI. (Pl.'s Br. at 21 ¶ 65) Upon arrival at CCI, the plaintiff was placed in DS-1, the most restrictive area of segregation. (Pl.'s Br. at 22 ¶ 67) The plaintiff asserts that defendant Douma placed him in DS-1 in retaliation for testifying against WCI staff. (*Id.*) Douma maintains that it is routine practice to initially place inmates who arrive in segregation status on the most secure and restrictive unit in the institution. (Aff. Douma at 2, ¶ 4)

### Placement in TLU

On October 1, 2002, the plaintiff was taken to the United States District Court for the Eastern District of Wisconsin in Milwaukee, where he testified against WCI staff in the Sanville case. (Pl.'s Br. at 24 ¶ 72) On January 25, 2003, the plaintiff was placed in TLU pending an administrative confinement hearing. (Pl.'s Br. at 25 ¶ 76)

## Tomac Conduct Report

On May 21, 2003, defendant Tomac asked the plaintiff to assist him in opening the cell trap because it was stuck, and the plaintiff complied by hitting the trap with his foot. (Pl.'s Br. at 26 ¶ 78)  The next day, the plaintiff received Conduct Report 1259376, which accused the plaintiff of kicking the trap open with extreme force in an attempt to injure Tomac. (Pl.'s Ex. 20)  He was charged with violating Wis. Admin. Code §§ DOC 303.25, disrespect, DOC 303.28, disruptive conduct, and DOC 303.12(a), attempted battery. (*Id.*) On May 30, 2003, the plaintiff was found guilty of the disrespect and disruptive conduct charges. (Aff. Douma, Ex. A at 3)

## Pitzen Conduct Report

On June 18, 2003, defendants Pitzen and Millard escorted the plaintiff from the showers to his cell. (Aff. Pitzen at 2, ¶ 3)  At the time, the plaintiff was in full restraints, wearing handcuffs and iron leg shackles. (*Id.*)  The defendants realized that the mat the plaintiff used to kneel on while his shackles were removed had been left in the shower. (*Id.*) Defendant Millard returned to the shower to get the mat, and the plaintiff, who was bull strapped to the front of his cell, stayed behind with defendant Pitzen. (*Id.*)  While Millard was gone, the plaintiff heard another inmate call his name. (Pl.'s Br. at 31 ¶ 85)  Upon hearing his name, the plaintiff turned his head to see who was calling him. (*Id.*)

There is a dispute as to whether defendant Pitzen instructed the plaintiff to face forward after he turned his head.  However, it is uncontested that soon after turning in defendant Pitzen's direction, the plaintiff was slammed into his cell door. (*Id.*)  Next, Pitzen forced the plaintiff to the floor. (*Id.*)  Once the plaintiff was on the floor, defendant Millard and other officers arrived to assist Pitzen. (Aff. Pitzen at 2, ¶ 6)  The plaintiff was led to the shower where his clothes were removed and a search was performed. (Aff. Pitzen at 3, ¶ 7)

-7-

Afterward, the plaintiff was taken to a cell without a blanket or mattress. (*Id.)* He was issued Conduct Report 1500949, charging him with violating Wis. Admin. Code §§ DOC 303.24, disobeying orders, and DOC 303.28, disruptive conduct. (Pl's Ex. 23) On June 19, 2003, the plaintiff was found guilty on both counts. (Aff. Ray Ex. B at 63)

## IV. ANALYSIS

The defendants argue: 1) the case should be dismissed because there is not a genuine dispute of material fact; 2) defendant Tomac was never served and should be dismissed for lack of personal jurisdiction; 3) there was no notice of claim filed in this case regarding a Wisconsin tort law claim; 4) the plaintiff's response to the defendant's summary judgment motion does not comply with Civil Local Rule 56.2; 5) the plaintiff failed to exhaust his administrative remedies; 6) the retaliation complaint received November 19, 2003, was untimely, does not make specific allegations, and does not name all defendants; 7) the complaint received July 1, 2003, names only defendant Pitzen as violating the plaintiff's rights; 8) defendant Pitzen is entitled to judgment on the merits on the excessive force claim; 9) the argument that the warden's designee violated the plaintiff's due process rights lacks merit; 10) the due process complaint received August 4, 2003, only complains about a signature defect and the performance of the plaintiff's advocate at a disciplinary hearing; and 11) each of the defendants is entitled to judgment in their favor based on qualified immunity.

### A. Personal Jurisdiction Over Defendant Tomac

At the outset, the court will address the defendants' argument that it lacks personal jurisdiction over defendant Tomac. They submit that because defendant Tomac has never been served, this court has not established personal jurisdiction.

The plaintiff was allowed to proceed on a due process claim against Correctional Officer "Lamar Tomac." The Marshals Service attempted to serve a Lamar

Tomac at Columbia Correctional Institution in Portage, Wisconsin on May 27, 2004. A summons for defendant Tomac was issued on July 23, 2004, and was returned with the remarks: "Attempted to srv. at Columbia Corr. Subject has never worked there. Could not locate on internet searches."[1] (Process for Lamar Tomac Receipt and Return)

The plaintiff wrote to AAG Charles Hoornstra, counsel for the defendants, complaining that the plaintiff was unable to serve process on defendants Kempfer and Tomac. (Pl.'s Ex. 26) Sally Mueller, a paralegal at the Department of Justice (DOJ), sent the plaintiff a letter on May 19, 2004, stating that the DOJ would accept service for defendants Kempfer and Tomac. (*Id.*) Mueller advised: "By copy of this letter, we are instructing the Marshal's Service to mail the applicable paperwork for these two defendants to Assistant Attorney General Michael J. Losse." (*Id.*)

Although it is unclear whether the Marshal's Service ever attempted to serve defendants Kempfer and Tomac at the DOJ, Kempfer was served at WCI on July 24, 2004. Consequently, it appears that defendant Tomac has not been served.

Regardless, the defendants' attorney, AAG Michael J. Losse, acknowledged himself as "counsel" for defendant Tomac on June 2, 2004. (*See* Defendants' Answer) "When an attorney of a court of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed. A record which shows such an appearance will bind the parties until it is proven that the attorney acted without authority." *Hill v. Mendenhall*, 88 U.S. (21 Wall) 453, 454 (1875). Hence, it is notable that the defendants have not argued that Attorney Losse acted without authority in

_____

[1]It is undisputed that defendant Tomac was a Correctional Officer at CCI during the plaintiff's incarceration. The defendants allege that Tomac's first name is John, and not Lamar, as indicated in the complaint. (Defendants' Answer at 3 ¶ 14) Defendant Tomac's signature appears on the plaintiff's CCI conduct record, (Aff. Douma Ex. A at 3) and on conduct report number 1259376, in which the plaintiff was charged with violating Wis. Admin. Code DOC §§ 303.25 and 303.28. (D.'s Ex. 20 )

making an appearance for defendant Tomac. As a result, this court finds that it has personal jurisdiction over defendant Tomac and that the defendants' motion to dismiss defendant Tomac shall be denied.

### B. Intentional Tort Claim

The plaintiff was allowed to proceed on an intentional tort claim for assault and battery against defendants Pitzen, Millard and Kopfhamer. Such claims may be pursued under Wisconsin Statute § 893.57. Further, the supplemental jurisdiction statute 28 U.S.C. § 1367 permits federal courts to exercise jurisdiction over an action containing federal and state claims where these claims are so related as to form part of the same case or controversy. *See Estate of Thurman v. City of Milwaukee*, 197 F. Supp. 2d 1141, 1151 (E.D. Wis. 2002).

Even so, it is undisputed that the plaintiff failed to file notice of the intentional tort claim against defendants Pitzen, Millard and Kopfhamer. The plaintiff states that he did not file a notice of claim because he believed that filing notice would have been "futile because the Attorney General would of (sic) accept the defendants arguement (sic) and the ICRS Arguement (sic) that Plaintiff was not assaulted." (Pl.'s Br. at 46-47 ¶ 109) According to the plaintiff, the defendants have not been prejudiced by his failure to file notice of his claim. (*Id.*) He adds that he had limited funds for certified mail and postage required to file a notice. (*Id.*)

Section 893.82 sets forth the strict requirements that a plaintiff must follow when giving notice of an injury. A complaint that does not demonstrate compliance with § 893.92 Wis. Stat. fails to state a claim upon which relief can be granted. *Yotvat v. Roth*, 290 N.W.2d 524, 527 (Wis. Ct. App. 1980). In this case, the plaintiff failed to serve his notice of claim on the Attorney General's office within the 120-day time period mandated by

the statute. The plaintiff's noncompliance is fatal to his state law claims. *Weinberger v.*

*Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997). Consequently, the plaintiff's intentional tort

claims must be dismissed.

### C. Compliance With Civil Local Rule 56.2

The defendants assert that they are entitled to judgment as a matter of law

because the plaintiff's response to their motion for summary judgment does not comply with

Civil Local Rule 56.2(b)(1). Specifically, they contend that the plaintiff does not respond to

each of the defendants' proposed findings of fact.

Civil Local Rule 56.2(b)(1) provides:

**Response.** Any materials in opposition to a motion filed under
this rule must be filed within 30 days from service of the motion
and must include:

(1) A specific response to the movant's proposed finding of fact,
clearly delineating only those findings to which it is asserted that
a genuine issue of material fact exists. The response must refer
to the contested finding by paragraph number and must include
specific citations to evidentiary materials in the record which
support the claim that a dispute exists.

Civ. L.R. 56(b).

While the plaintiff does not respond to the defendants' motion by paragraph

number, he addresses their arguments and includes materials that raise a genuine issue of

material fact. For example, the plaintiff specifically denies the defendants' averment that he

told correctional officer Pitzen that he could "face any way" he wanted, and that he was

warned twice to "face forward." (Defendants' Proposed Findings of Fact at 2 ¶ 27; Pl.'s Br.

at 39 ¶ 100) Thus, contrary to the defendants' contentions, the court is not required to take

as true all of defendants' proposed findings of fact. Based on the foregoing, the plaintiff's

-11-

response complies with Civil Local Rule 56.2(b), and the defendants are not entitled to summary judgment on this issue.

## D.  Exhaustion of Administrative Remedies

The defendants argue that this case should be dismissed because the plaintiff failed to exhaust his administrative remedies.  The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)a.

Exhaustion of administrative remedies is a condition precedent to suit.  *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (*citing Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)).  Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to Wisconsin inmates with complaints about prison conditions or the actions of prison officials.  Wis. Admin. Code § DOC 310.01(2)(a).  The Wisconsin Administrative Code provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule.  Wis. Admin. Code § DOC 310.05.  The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints."  Wis. Admin. Code § DOC 310.08(1).

-12-

To use the ICRS, an inmate must file a complaint with the inmate complaint examiner within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) and 310.09(6). After reviewing and acknowledging each complaint in writing, the inmate complaint examiner either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) and 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of recommendation. Wis. Admin. Code § DOC 310.12(1). Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner. Wis. Admin. Code § DOC 310.13(1). The corrections complaint examiner reviews the appeal, and then makes a recommendation to the Secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the correction complaint examiner's recommendation, or return the appeal to the corrections complaint examiner for further investigation. Wis. Admin. Code § DOC 310.14(2).

### 1. Exhaustion of Retaliation Complaint

The defendants claim that the plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim because his inmate complaint was untimely and was vague as to much of its content. For his part, the plaintiff maintains that he did not know the names of all the individuals involved at the time he filed his complaint.

On November 16, 2003, the plaintiff filed inmate complaint #CCI-2003-38149, alleging that WCI and CCI staff retaliated against him for testifying against WCI staff and the Department of Corrections. (D.'s Ex. C at 1) The plaintiff alleges that the defendants retaliated against him in the following ways: 1) on April 5, 2002, the plaintiff was released

-13-

from segregation to the general population but was returned to segregation later that day after he testified against WCI employees; 2) the plaintiff was transferred from WCI to CCI; 3) the plaintiff was the victim of fabricated conduct reports at WCI and CCI; 4) the Security Directors at WCI and CCI conspired to retaliate against the plaintiff; 5) the plaintiff was put on administrative confinement after testifying against the DOC at trial; 6) the plaintiff was "set up" by corrections officer Tomac; 7) while he was handcuffed and shackled, the plaintiff was attacked by defendants Pitzen, Millard and other unknown corrections officers; 8) to cover up the attack, defendant Pitzen fabricated a conduct report; 9) the plaintiff's witness statements were ignored at a disciplinary hearing; 10) the plaintiff was not given an opportunity to advance through segregation at CCI; and  11) the CCI administration has retaliated against the plaintiff with more segregation time and less privileges.  (D.'s Ex. C at 1)

Inmate Complaint #CCI-2003-38149 was received on November 19, 2003, by Institutional Complaint Examiner William Noland.  (D.'s Ex. C at 149)  Noland dismissed the complaint on November 20, 2003.  (*Id.*)  On December 9, 2003, Philip Kingston dismissed the complaint.  (*Id.* at 150)  On December 15, 2003, the plaintiff appealed Kingston's dismissal.  (*Id.* at 151)  On December 16, 2003, Sandra Haumataki dismissed the appeal.  (*Id.* at 158)  On December 20, 2003, Cindy O'Donnell affirmed the dismissal.  (*Id.* at 159)

Allegations that prison officials retaliated against an inmate for the inmate's exercise of his First Amendment rights are claims of "prison conditions" under the PLRA, requiring exhaustion before filing a § 1983 action in federal court.  *Johnson v. Litscher*, 260 F.3d 826, 828 (7th Cir. 2001).  When the state accepts an untimely filed inmate complaint and resolves it on the merits, the plaintiff has exhausted his administrative remedies.  *Riccardo v. Rausch,* 359 F.3d 510, 513 (7th Cir. 2004)(*citing Pozo v. McCaughtry,* 286 F.3d

1022, 1025 (7th Cir. 2002). "[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action." *Id.*

Inmate Complaint #CCI-2003-38149 was accepted on November 19, 2003, and a November 20, 2003, 'dismissal' indicates that the ICRS considered the merits of that Inmate Complaint. The dismissal states:

> The complainant alleges that DOC security staff from WCI and CCI, to include the Security Directors of each institution are conspiring in a retaliation against the complainant for testifying against the DOC. *He alleges that staff have fabricated reports to place him on administrative confinement. The ICE notes that the since 1997 to the present the complainant conduct report is replete with major offences from disruptive, disobeying orders, threats, battery, and manufacture of weapons.* In all cases the complainant has had ample opportunity to appeal these decisions and file complaints to have the hearing record reviewed for procedural errors. The ICE is not in the business of re-hearing old conduct reports or appeals of administrative confinement. *The complainant's raised an issue of being passed over for Step three in Program Segregation. While the institution has a step program in place an inmates, attitude, behavior and adjustment all plays a part. The inmate continues to receive conduct reports while in program status.* In the opinion of the ICE this is not the actions of an inmate who wishes to be moved through the step program. In the opinion of the ICE the complainant will have to exhibit a prolonged period of appropriate behavior if he expects to be moved through the step program.

(D.'s Ex. C at 149)(emphasis added)

The ICE responded directly to the merits of the plaintiff's claim of fabricated conduct reports and recounted the plaintiff's history of disruption, violence and numerous conduct reports. Also, the ICE responded directly to the plaintiff's claim of not advancing through segregation, asserting that the plaintiff continues to receive conduct reports.

The Inmate Complaint could have been rejected for failure to allege sufficient facts upon which redress can be made, (Wis. Admin. Code DOC § 310.11(5)(c)), or because the issue in the complaint was moot, (Wis. Admin. DOC § 310.11(5)(f)), or because the plaintiff submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint (Wis. Admin. Code DOC § 310.11(5)(d)). However, because the plaintiff's Inmate Complaint concerning his § 1983 claim of retaliation was addressed on its merits and appealed through the Secretary of the DOC, he has exhausted his administrative remedies. Thus, the plaintiff will be allowed to proceed on all issues raised in Complaint #CCI-2003-38149.

### 2. Exhaustion of Excessive Force Claim

The defendants do not dispute that the plaintiff exhausted his excessive force claim against defendant Pitzen, however, they allege that the plaintiff has not exhausted his excessive force claim against defendants Millard and Kopfhamer because they were not named in the inmate complaint. In response, the plaintiff submits that when he filed the complaint, he did not know the names of all the guards involved.

On June 30, 2003, the plaintiff filed Inmate Complaint #CCI-2003-22354, alleging that defendants Pitzen, Millard and "other guards" attacked him while he was handcuffed and shackled. (D.'s Ex. A at 118) Inmate Complaint #CCI-2003-22354 was received on July 1, 2003, by ICE Amy Millard. (D.'s Ex. A at 120) Millard dismissed the complaint on July 14, 2003. (*Id.*) On July 16, 2003, Philip Kingston dismissed the complaint. (*Id.* at 121) The plaintiff's appeal of Kingston's dismissal was acknowledged on July 22, 2003. (*Id.* at 124) On July 29, 2003, the appeal was dismissed by John Ray. Ray stated:

> These minor injuries (superficial abrasions on the left shoulder, chest and ankle) would appear to be consistent with the vertical wall stun used to gain control of the inmate as described in conduct report #1500949, and I thus find no excessive force was used.

(*Id.* at 125)  On July 29, 2003, Cindy O'Donnell dismissed the appeal.  (*Id.* at 126)

The defendants argue that because defendant Pitzen is mentioned 11 times in Inmate Complaint #CCI-2003-22354, defendant Pitzen is "clearly the focus of the complaint" and the claims in this action against other guards should be dismissed.  (Brief in Support of Defendants' Motion for Summary Judgment [D.'s Br.] at 6-7)  Nevertheless, the defendants admit that other "unnamed" guards are mentioned six times as being involved in the June 18, 2003, incident.  *Id.*  The complaint states:

> On June 18, 2003 ... I was assaulted by CO Pitzen and *other guards*.  I had injuries to my ankle, which was cut and swollen also to my wrist that was bruised and swollen and my back where *other guard* knelt.  I was slam (sic) to the concret (sic) floor which cause pain through my body and hip, by CO Pitzen and then *other guards* join in and start to assault me while I'm in full restraints.  My face was pin (sic) to the ground, while *guards* throw punches to my side and back, my wrists was twist in a pain full position, while *guards* kneel down in my back with their knees.  After they finish assaulting me I was pick up and my head was put into head lock while a *guard* had his hands over my eyes and my head been pull back causing pain to the back of my neck.  I want this dept. to investigate this matter without bias and see to it CO Pitzen doesn't escort me again.

(Defendants' Ex. A at 116-118)(emphasis added)

The plaintiff states:

> On June 30, 2002 Plaintiff filed an administrative complaint to the Inmate Complaint Review System (I.C.R.S.) at Columbia Correctional Institution, Complaint # C.C.I.-2003-22354, Plaintiff only knew Defendant Pitzen (sic) name, but did not know all the other guards (sic) name involved in the assault on Plaintiff on 6-18-03.  So Plaintiff put "other guards" to notified (sic) the administration that other guards assaulted Plaintiff along with Defendant Pitzen.

(Pl.'s Br. at 44-45 ¶¶ 104-106)

The defendants argue that the controlling case is *Keller v. Hansen*, Case No. 01-C-761 slip op. at 15 (E.D. Wis. March 10, 2003), in which United States Magistrate Judge Callahan held that prisoners failed to exhaust their administrative remedies where defendants named in their § 1983 complaint were not named in the ICRS complaint. In *Keller*, the petitioner alleged that the correctional officer defendants denied him medical care for injuries suffered after excessive force was used by the defendants. *Id.* The issue was whether the plaintiff could proceed on an excessive force claim against corrections officers who were not named in the inmate complaint. *Id.* The court held that he could not because the inmate complaint made no claim of excessive force. *Id.* at 17. The court stated:

> The inmate complaint only addresses Keller's alleged requests for medical attention of March 7th, and makes no mention of having requested assistance at the time of the March 6th Unit 18 incident. Further, the only individuals identified in DCI-2001-7525 are 'CO-Velasco, CO-Flier, SGT. Narance, and Capt. Garrison.' Keller makes no references to any unnamed or 'John Doe' staff members. No references are made to any of the named defendants.

*Id.*

The present case is distinguishable from *Keller*. Here, the plaintiff made an excessive force claim in complaint #CCI-2003-22354. He identified by name two of the three individuals who attacked him (Pitzen and Millard), and correctional officers Pitzen and Millard are named defendants. Moreover, the plaintiff made six references to unnamed staff members ("other guards").

In *Blackshear v. Messer*, 2003 U.S. Dist. LEXIS 11080 (N.D. Ill. June 30, 2003), the court held that § 1983 claims against a named defendant involving the same theory and facts as the grievance against an individual identified by job title but not by name, was exhausted because prison officials were alerted to a claimed wrong. In his complaint,

-18-

the plaintiff petitioner in *Blackshear* referred to the defendant as "the nurse" at the jail, but did not mention her by name. *Id.* at 4. The court held that the plaintiff exhausted because he alleged the same claim, against the same individuals and relied on the same legal theory as originally set out in his grievances. *Id.*

Similarly, the plaintiff here has exhausted his administrative remedies because he alleges the same claim (excessive force), against the same individuals (Pitzen, Millard and "other guards," who turned out to be defendant Kopfhamer) and relied on the same type of legal theory (cruel and unusual punishment) as set out in his grievance. *Id.* Consequently, this court finds that the plaintiff has exhausted his administrative remedies with respect to his claims against defendants Pitzen, Millard and Kopfhamer.

### 3. Exhaustion of Due Process Claims

**Claim 1**

The defendants argue that the plaintiff's due process claims should be dismissed for failure to exhaust. After the May 14, 2002, incident in which the plaintiff refused juice that was offered to him by defendant Kempfer, the plaintiff was charged with violating Wis. Admin. Code DOC §§ 303.28, disruptive conduct, and 303.12, battery. On May 14, 2002, the plaintiff wrote to Capt. Schueler and Security Director Clements, demanding that Schueler send a videotape of the plaintiff's cell to Clements and that Clements preserve the videotape for the plaintiff's disciplinary hearing. (Pl.'s Br. At 9 ¶ 32; 11-12 ¶ 38) However, the Hearing Committee found that there was no videotape of the incident. (Pl.'s Ex. 10) On May 30, 2002, the plaintiff was found guilty of disruptive conduct, and was sentenced to 5 days adjusted segregation and 240 days program segregation. (Pl.'s Ex. 9) The plaintiff did not appeal the decision. Therefore, Claim 1 will be dismissed because the plaintiff has not exhausted his administrative remedies.

-19-

### Claim 2

The defendants argue that the plaintiff's due process claims should be dismissed for failure to exhaust. In connection with the May 21, 2003, incident in which defendant Tomac alleged that the plaintiff forcibly kicked his cell trap open, the plaintiff was charged in Conduct Report #1259376 with violating Wis. Admin. Code DOC §§ 303.25, disrespect, and DOC 303.28, disruptive conduct. (Pl.'s Ex. 20) On May 30, 2003, the plaintiff was found guilty of both charges and was sentenced to 8 days adjusted segregation, 180 days program segregation, and 5 days loss of exercise. *Id.* The plaintiff did not appeal Conduct Report #1259376. However, the plaintiff did complain of fabricated conduct reports in Complaint #WCI-2003-38149, which was exhausted. Because the plaintiff was allowed to proceed on all claims in complaint #WCI-2003-38149, he has exhausted his second due process claim.

### Claim 3

On June 19, 2003, defendant Pitzen issued Conduct Report #1500949 related to an alleged attack on June 18, 2003. (D.'s Ex. B at 63) Pitzen stated that the plaintiff refused to face the back of the cell as he instructed, and that the plaintiff gave him "target glances." (*Id.*) The plaintiff was charged with violating Wis. Admin. Code DOC §§ 303.24, disobeying orders, and DOC 303.28, disruptive conduct. (*Id.*) On July 7, 2003, the plaintiff was found guilty on both counts. (D.'s Ex. B at 65)

On July 13, 2003, the plaintiff appealed the decision of the adjustment committee. (D.'s Ex. B at 82) On July 29, 2003, John Ray, Corrections Complaint Examiner at CCI, recommended that Inmate Complaint #CCI-2003-22354 be dismissed. (D.'s Ex. A at 10) Cindy O'Donnell accepted John Rays's recommendation as the decision of the DOC Secretary on July 29, 2003. (D.'s Ex. A at 11)

The plaintiff filed Inmate Complaint #CCI-2003-26473 on August 3, 2003, alleging procedural errors and due process violations related to complaint #CCI-2003-22354 and the July 7, 2003, disciplinary hearing. (D.'s Ex. B) He complained that: 1) only the warden, and not the warden's designee, could review a decision of the adjustment committee; 2) the plaintiff's advocate at the disciplinary hearing was ineffective because she failed to verify the witness statements that could have been used in the plaintiff's defense; and 3) the Committee's rejection of witness statements was procedural error and a due process violation. (*Id.*)

On August 5, 2003, ICE Noland dismissed Inmate Complaint #CCI-2003-26473. (*Id.* at 133) Warden Kingston affirmed the dismissal on August 8, 2003. (*Id.* at 134) The plaintiff's appeal to Corrections Complaint Examiner Ray was denied on August 21, 2003. (*Id.* at 142) On August 23, 2003, Cindy O'Donnell dismissed the plaintiff's request for review of the denial. (*Id.* at 143) Thus, the plaintiff exhausted his third due process claim.

As a result, the court will address the merits of the plaintiff's retaliation claims, excessive force claims, and the plaintiff's second and third due process claims. On the other hand, the plaintiff's intentional tort claim will be dismissed for failure to serve notice, and the plaintiff's first due process claim will be dismissed for failure to exhaust.

### 4. Total Exhaustion Doctrine

Because the plaintiff has exhausted some claims (retaliation, excessive force, and two due process claims), and not others (one due process claim), the defendants contend that the "total exhaustion doctrine" mandates dismissal of this entire action, citing *Graves v. Norris*, 218 F.3d 884 (8th Cir. 2000). In *Graves*, the court held that when an inmate fails to exhaust some of his claims, section 1997e(a) requires dismissal of the entire action, including any exhausted claims. However, courts are split on this issue. *See Ross*

*v. County of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004) (total exhaustion is necessary); *Mubarak v. Cal. Dep't of Corrs.*, 315 F. Supp. 2d 1057 (S.D. Cal. 2004) (same); *Donovan v. Magnusson*, 2004 WL 1572598 (D. Me. 2004) (same); *Ellison v. Cal. Dep't of Corrs.*, 2003 WL 21209659 (N.D. Cal. 2003) (same).

Furthermore, several courts have rejected the total exhaustion requirement. *See Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (total exhaustion is not necessary); *Henderson v. Sebastian*, 2004 WL 1946398 (W.D. Wis. 2004) (same); *Blackmon v. Crawford*, 305 F. Supp. 2d 1174, 1178 (D. Nev. 2004); *Alexander v. Davis*, 282 F. Supp. 2d 609, 612 (W.D. Mich. 2003). The Seventh Circuit Court of Appeals has impliedly rejected the total exhaustion requirement in several cases. *See, e.g., Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002) (affirming dismissal of one claim for failure to exhaust and remanding for exhaustion determination about another); *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002) (affirming partial dismissal for failure to exhaust);

Recently, United States District Judge Barbara Crabb conducted a thorough analysis of the issue in *Henderson v. Sebastian*, 2004 WL 1946398 (W.D. Wis. Aug. 25, 2004). Judge Crabb concluded that total exhaustion is not required under § 1997e(a) because: 1) the Seventh Circuit has tacitly rejected it; 2) dismissal of mixed actions is not mandated by the plain language of § 1997e(a); and 3) dismissal of mixed actions is not consistent with the Prison Litigation Reform Act's primary purpose of efficiency. (*Id.* at 14-24) Adopting the reasoning of Judge Crabb, this court will not apply the total exhaustion doctrine. Therefore, the plaintiff will be allowed to proceed on those claims in which he has exhausted his administrative remedies and the court will address the merits of those claims.

### D. Retaliation

As discussed in Section IV.C.1, the plaintiff exhausted Inmate Complaint #CCI-2003-38149, in which he complains of retaliation by DCI and WCI staff. In response, the defendants re-assert their exhaustion argument instead of submitting evidence showing that they are entitled to summary judgment. For example, the defendants advance that the Inmate Complaint is "not timely as to any of the events therein" and "vague as to person and date as to much of its content." (D.'s Br. at 9) As noted, prison officials could have rejected the complaint because it was untimely, or because it failed to allege sufficient facts upon which redress can be made. Wis. Admin. Code DOC §§ 310.11(5)(d) and 310.11(5)(c). However, when the state accepts an untimely filed inmate complaint and resolves it on the merits, the plaintiff has exhausted his administrative remedies. *Riccardo,* 359 F.3d at 513.

Moreover, the plaintiff's Inmate Complaint does provide names, dates and content. The plaintiff states that he was retaliated against at WCI by defendants Schueler, Clement, Roelke, and Kempfer. (Aff. Ray Ex. C at 148). He claims that at DCI he was subjected to retaliatory acts by the "Security Director, Warden, deputy Warden, and Capt. Nickel." (*Id.*) In addition, he identifies April 5, 2002, as the day he testified in the deposition, and he states that he was placed on administrative confinement after testifying in district court on October 1, 2002. (*Id.*)

The defendants have been given notice and opportunity to respond to the plaintiff's charges of retaliation. *Riccardo,* 359 F.3d at 513. Even though they assert that they did not retaliate against the plaintiff, it is well established that neither party may rest on mere allegations or denials in the pleadings at the summary judgment stage. *Anderson*, 477 U.S. at 248. Accordingly, the defendants' motion for summary judgment shall be denied.

## E.  Excessive Force

The defendants contend that only the necessary amount of force was used to gain control of the plaintiff.[2]  The plaintiff submits that defendants' actions of assaulting him constituted excessive use of force in violation of the Eighth Amendment.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits "unnecessary and wanton infliction of pain" on prisoners.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  In cases involving the use of excessive force, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 7.  Factors in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Another relevant factor in evaluating the use of force is the extent of an inmate's injury.  *Hudson*, 503 U.S. at 7.  While it is not necessary that a plaintiff demonstrate significant injury to state a claim for excessive force, "the degree of injury is relevant to determining whether the use of force could plausibly have been thought necessary in a particular situation" and a minor injury supports the conclusion that the incident was "at most . . . a de minimis use of force not intended to cause pain or injury to the inmate."  *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994).

Liability under § 1983 does not attach to every actionable battery.  *Davis v. Lane*, 814 F.2d 397, 400 (7th Cir. 1997). De minimus uses of force that are not repugnant

---

[2](Aff. Pitzen at 3, ¶ 8)  Defendants Millard and Kopfhamer have not submitted affidavits disputing the plaintiff's claims.

to the conscience of humanity do not constitute Eighth Amendment violations.  *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994).  In order to survive a motion for summary judgment, the prisoner must have evidence that will support a reliable inference of wantonness in the infliction of pain.  *Whitley*, 475 U.S. at 322.  Infliction of pain that is "totally without penological justification" is *per se* malicious.  *Hope v. Pelzer*, 536 U.S. 730 (2002).

It is undisputed that the plaintiff was thrown against his cell door in a "vertical wall stun" and directed to the floor using "decentralization."  (Pitzen Aff. at 2 ¶ 6).  The plaintiff complains of suffering "a bruised and swollen collarbone and shoulder, bruised and swollen wrists, a swollen and cut ankle, bruised chest, a bruised right side (rib area) and lumps in head."  (Pl.'s Br. at 34 ¶ 92).  The plaintiff was treated for "superficial abrasions on the left shoulder, chest and ankle."  (Defendants' Ex. A at 125). Thus, it appears that the plaintiff's injuries were minor.  However, the absence of serious injury is relevant to an Eighth Amendment inquiry but does not end it.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

There are three main factual disputes between the parties.  First, the plaintiff and the defendants disagree as to whether the plaintiff knew that he was required to face the back of his cell when correctional officers returned him to the cell.  In a memo from defendant Douma to DCI staff, Douma indicated that the "inmate will be directed to face the back of the cell" and any resistance would be considered as "potentially assaultive" and would be "countered" by the escort officers.  (Aff. Douma Ex. B) It appears that the plaintiff received a copy of the memo because he was listed under the "CC" list at the bottom of the document.  (Aff. Douma Ex. B) On the other hand, the plaintiff maintains that he has never received any rule or policy pertaining to inmates keeping their heads forward when they are returned to their cells.  (Pl.'s Br. at 36 ¶ 95)

The second factual dispute concerns whether the plaintiff was warned to face forward before defendant Pitzen slammed him into his cell door. Pitzen recalls that he directed the plaintiff to keep his head facing forward, but the plaintiff responded that he could face any way he wanted. (Aff. Pitzen at 2 ¶ 4) Pitzen states that he ordered the plaintiff a second time to face forward, at which time he felt active tension in the plaintiff's arm, and perceived that the plaintiff was giving him a target glance. (Aff. Pitzen at 2, ¶ 4) Pitzen then directed the plaintiff to the cell door using a vertical wall stun. (Aff. Pitzen at 2, ¶ 5)

Conversely, the plaintiff submits that Pitzen slammed him into the iron cell door before issuing a warning. (Pl.'s Br. at 31 ¶ 85) He contends that Pitzen told him to "Keep your head forward" after administering the vertical wall stun. *Id.* Right after he was told to face forward, Pitzen and Millard slammed the plaintiff to the floor and yelled "stop resisting," even though he was not resisting. *Id.*

Finally, there is a dispute as to what happened once the plaintiff was decentralized and directed to the floor. The defendants maintain that the plaintiff was "actively resisting" when he was on the floor and defendants Millard and Kopfhamer responded to assist in restraining him. (Aff. Pitzen at 2, ¶ 6) On the other hand, the plaintiff avers that once he was on the floor, Pitzen, Millard and Kopfhamer punched him repeatedly. (Pl.'s Br. at 32 ¶ 87) The plaintiff alleges that Kopfhamer covered his eyes and he received more punches and was choked. (Pl.'s Br. at 32 ¶ 88-89)

Often circumstances require prison officials to balance the need "'to maintain or restore discipline' through force against the risk of injury to inmates." *Hudson*, 503 U.S. at 6 (quoting Whitley, 475 U.S. at 321-22). Both situations require officials to act quickly and decisively. *Id.* Likewise, both implicate the principle that "[p]rison administrators . . . should

-26-

be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal citations and quotations omitted). However, the defendants have not shown that there was a need to maintain or restore discipline. This is largely due to the lack of defendants' evidence.

Because there is a dispute as to whether the plaintiff was warned before he was thrown into his cell door, and whether he continued to resist, the defendants have not shown that the use of force was necessary. Moreover, without the affidavits of defendants Millard and Kopfhamer, it is not clear whether force was required and how much force was used after Pitzen administered the vertical wall stun. For these reasons, the court may not find in favor of the defendants. Accordingly, the defendants' motion for summary judgment shall be denied.

### F. Due Process

The plaintiff charges further that defendant Tomac violated his due process rights by issuing the plaintiff a fabricated conduct report in retaliation for the plaintiff's testimony against WCI employees. (Pl.'s Br. at 26-27 ¶ 78)

In analyzing a due process claim, a court must determine whether the defendants deprived the plaintiff of a protected liberty or property interest. If a liberty or property interest is involved, the court must then determine what process was due. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996), (*citing Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir. 1996)). The constitutional violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

The plaintiff does not have a protected liberty interest in staying in the general population or not being placed in segregation as long as such confinement does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. at 472; *Sylvester v. Hanks*, 140 F.3d 713 (7th Cir. 1998). In *Sandin*, the Supreme Court set new standards for determining liberty interests in prison litigation suits. Instead of analyzing to see whether the state had created mandatory language in its statutes and regulations, courts were directed to look at the nature of the deprivation to determine whether a liberty interest protected by the Due Process Clause existed. *Sandin*, 515 U.S. at 484.

On May 30, 2003, the plaintiff was found guilty of violating Wis. Admin. Code §§ DOC 303.25, disrespect, and DOC 303.28, disruptive conduct. (Plaintiff's Ex. 9 at 3). He was sentenced to eight days adjusted segregation, 180 days program segregation, and five days loss of exercise. (*Id.*) On August 3, 2003, the plaintiff filed complaint #CCI-2003-26473, alleging procedural errors and due process violations related to the disciplinary hearing. The plaintiff alleged that: 1) only the warden, and not the warden's designee, could review a decision of the adjustment committee; 2) the plaintiff's advocate at the disciplinary hearing was ineffective because she failed to verify the witness statements that could have been used in the plaintiff's defense; and 3) the Committee's rejection of witness statements was procedural error and a due process violation. (Aff. Ray Ex. B at 127-131)

The Seventh Circuit has had the opportunity to review whether disciplinary segregation created a liberty interest. It has held that even when an inmate's segregation status meant that he could not take any classes, use the gym, work at an assignment, earn pay, have access to a day room, or take programs offered to inmates in the general population, a liberty interest was not created. *Thomas v. Ramos*, 130 F.3d 754, 760-761

(7th Cir. 1997) (plaintiff petitioner was sentenced to 70 days disciplinary segregation and completely denied exercise privileges). The court noted that, "lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a retraction justified by the consideration underlying our penal system." *Id.* at 761 (*quoting Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir. 1995). Accordingly, the defendants' motion for summary judgment on the remaining due process claims shall be granted.

Now, therefore,

**IT IS ORDERED** that the defendant's motion for summary judgment (docket #47) is **granted in part** and **denied in part**. Plaintiff's intentional tort claim is dismissed for failure to serve notice, plaintiff's first due process claim is dismissed for failure to exhaust, and plaintiff's remaining due process claims are dismissed on the merits. Plaintiff may proceed on his excessive force and retaliation claims.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2005.

BY THE COURT:

s/C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. District Judge