# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SONNIEL R. GIDARISINGH,

    Plaintiff,

v.                                               Case No. 04-CV-38

GARY R. MCCAUGHTRY, MARC CLEMENT,
STEVEN SCHUELER, CAPTAIN O'DONOVAN,
CORRECTIONAL OFFICER JASON KEMPFER,
CHRIS ROELKE, WARDEN PHIL KINGSTON,
TIM DOUMA, JANEL NICKEL,
COLLEEN JAMES, LAMAR TOMAC,
CORRECTIONAL OFFICER KEVIN PITZEN,
CORRECTIONAL OFFICER JEREMIAH MILLARD,
CORRECTIONAL OFFICER TRACY KOPFHAMER,
CORRECTIONAL OFFICER RANDALL BECKER,
SGT. HART, SGT. RANDY MUELLER,
and CORRECTIONAL OFFICER PETER BUWALDA,

    Defendants.

## ORDER DENYING PLAINTIFF'S RULE 60(b) MOTION (DOC. #303) AND DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC. #308)

Plaintiff, Sonniel R. Gidarisingh, has filed a motion for relief from judgment pursuant to Federal Rules of Civil Procedure 60(b)(3) and (6). After considerable delay, the motion is fully briefed and ready for resolution. For the reasons set forth herein, the court finds that Gidarisingh has not met the burden for relief under Rule 60.

### Background

Gidarisingh is a Wisconsin state prisoner serving a life sentence. Beginning on April 5, 2002, he provided a deposition and trial testimony in a lawsuit against the Wisconsin Department of Corrections (DOC) and three DOC employees involving the July 1998 suicide of Wisconsin inmate Matthew Sanville.

In 2004, Gidarisingh filed this action against DOC personnel at Waupun Correctional Institution (WCI) and Columbia Correctional Institution (CCI). He claimed that he was placed in segregation status in retaliation for a deposition he gave in the Sanville lawsuit. Gidarisingh also alleged several civil rights violations between 2002 and 2007 while he was held at WCI and CCI. He contended that the incidents of misconduct by DOC personnel, who know about his participation in that case, were in retaliation for his deposition and trial testimony in the Sanville matter. Gidarisingh also claimed that DOC personnel conspired against him because of his participation in the Sanville litigation.

From April 28 to May 1, 2008, a trial to the court was held in this action. Gidarisingh was represented by Foley & Lardner, LLP, which appeared *pro bono* at the court's request. The case was taken under advisement and the court entered judgment in favor of the defendants, and issued a Decision and Order for Judgment on September 29, 2009. With regard to Gidarisingh's retaliation claim, the court determined that he had engaged in protected speech by providing deposition testimony and testifying in the Sanville case. However, the court found that the evidence did not show that Gidarisingh's deposition and trial testimony were substantial or motivating factors in the challenged actions of the defendants:

> Notably, the plaintiff does not allege that the defendants to the lawsuit retaliated against him. Rather, he avers that the co-workers and associates of Ivy Scapardine retaliated against him. In addition, he has failed to establish that the defendants in this case knew about his participation in the Sanville litigation. Moreover, the evidence does not support a finding that the events cited by the plaintiff would have transpired differently absent a retaliatory motive. For example, the evidence indicates that the plaintiff was sent to TLU on April 5, 2002, because his release from segregation to the general population was a mistake. As noted earlier, this is supported

by Exhibit 1, which shows that a decision was made the previous month that upon release from segregation the plaintiff would go to temporary lock-up pending referral to administrative confinement. Also, the court finds credible the defendants' testimony regarding the incidents claimed to be retaliatory involved legitimate, non-retaliatory actions.

(Docket No. 219 at 6.)

The court also determined that excessive force was not used against Gidarisingh:

> The testimony and other evidence submitted at trial leads this court to conclude that on June 18, 2003, force was used against the plaintiff to maintain and restore discipline. Pitzen reasonably perceived that the plaintiff was a threat because he was on two-man escort status. According to Pitzen, plaintiff turned his head and tensed his arms. Moreover, Douma's memo which was posted to the front of plaintiff's cell alerted plaintiff that any resistance would be considered potentially assaultive.
>
> Defendant Pitzen believed it was inappropriate to temper his use of force because he thought it unlikely that using less force would have allowed him to get the plaintiff against the door fast enough to prevent the plaintiff from taking any action. In addition, the evidence shows that the plaintiff suffered minor injuries, which supports a finding that the force used was appropriate. Further, nurse Persson believes that the plaintiff's injuries were not serious or life-threatening. In the days following the incident, the plaintiff did not ask for medical care for injuries sustained during the incident even though he was seen by medical professionals during that time. No bruises, knots or broken collarbone was noted on the plaintiff's medical chart. Finally, the strip search which followed the June 18, 2003, scuffle was a standard procedure used in placing plaintiff on control status, and the plaintiff refused to comply with the search. The court finds no good reason to conclude that the strip search was intended to humiliate or inflict psychological pain.

(*Id.* at 9-10.)

3

Finally, the court concluded that Gidarisingh's conspiracy claim failed because of the absence of an underlying violation of his constitutional rights. The court also determined that the evidence did not show that any of the defendants conferred in any way regarding the treatment of Gidarisingh or that there was an understanding among two or more defendants respecting any matter touching on his constitutional rights.

The court will now set forth an overview of this case following the September 29, 2009, entry of judgment. On October 7, 2009, Gidarisingh filed a *pro se* motion for extension of time to file a motion to alter or amend judgment "by myself or appointed attorney at Foley & Lardner LLP." (Docket No. 221 at 1.) In his supporting declaration, Gidarisingh averred that he intended to file a motion to amend judgment, either by his appointed attorney or *pro se*, and that he did not know if his attorney would file a timely motion to alter judgment. (Docket No. 222 ¶¶ 3, 5.) He added that he would be unable to timely file a Rule 59(e) motion *pro se* because he was in segregation. (*Id.* ¶ 5.) Gidarisingh filed a *pro se* motion for enlargement of time to file materials supporting his Rule 59 motion, motion for permission to supplement Rule 59 motion, and motion for production of transcripts on October 20, 2009. (Docket No. 223.) By this motion, Gidarisingh reiterated his request to file a motion under Rule 59, asserted that another prisoner was assisting him in preparing such a motion, and that due to communication impediments involving the prisoner assisting him, he needed the trial transcripts and exhibits to file his motion. Gidarisingh filed his *pro se* notice of appeal and motion for leave to proceed *in forma pauperis* on appeal on October 28, 2009.

On January 29, 2010, the court granted Gidarisingh's motion for leave to proceed *in forma pauperis* on appeal. In the same order, the court denied as moot his two motions for extension of time to file a motion to alter or amend judgment pursuant to Rule 59(e). The court reasoned that the motions were not timely filed, that it did not have discretion to extend the period of time for filing a motion under Rule 59(e), *see* Fed. R. Civ. P. 6(b), and that Gidarisingh filed a notice of appeal rather than a motion to alter or amend judgment.

On April 16, 2010, Gidarisingh filed a motion requesting, (1) production of his entire trial transcripts without cost; (2) that the court allow him to file his Rule 59(e) motion 60 days after the production of his trial transcripts; and (3) that the court request his trial attorneys to assist him in his post trial motions. (Docket No. 235.) On June 25, 2010, the court concluded that the Federal Rules of Civil Procedure and the applicable law precluded Gidarisingh from filing a Rule 59(e) motion to alter or amend judgment. (Docket. No. 237 at 4.) However, the court permitted him to proceed on a motion for relief from judgment pursuant to Rule 60(b) and ordered Gidarisingh to inform the court within 30 days whether he would file a Rule 60(b) motion. (*Id.* at 4, 7.) Inasmuch as Gidarisingh was proceeding *pro se*, he was provided with a free copy of the trial transcripts. (*Id.* at 6.)

On July 13, 2010, Gidarisingh filed a motion stating that he intended to file a Rule 60(b) motion. (Docket No. 239.) On July 20, 2010, the court granted his motion to file a Rule 60(b) motion, denied his motion to appoint counsel, and ordered him to file his Rule 60(b) motion within 60 days after receiving the trial transcripts. (Docket No. 246.)

In due course, Gidarisingh was given access to seven boxes of legal materials which he received from his former attorneys. (Docket No. 256 at 1.) According

to DOC institutional rules, inmates were only permitted to keep in their cells legal materials totaling no more than 20" x 20" x 20" space. Because of pending motions before this court, Gidarisingh's excess legal materials were placed in storage and he was provided the opportunity to regularly exchange the materials in his cell with materials placed in storage. (Docket No. 269 at 1.) Regardless, Gidarisingh filed a motion for injunctive relief, asking the court to order the defendants to allow him to retain all of his legal documents in his cell and requested an extension of time to file the Rule 60(b) motion. (Docket No. 248.)

On November 22, 2010, the court directed Gidarisingh to file his Rule 60(b) motion on or before January 14, 2011, and that no further extensions would be granted. (Docket No. 269 at 3.) However, shortly thereafter, defendants' counsel advised the court that a property room employee at Green Bay Correctional Institution (GBCI), where Gidarisingh was confined, had inadvertently destroyed Gidarisingh's excess legal materials that had been placed in storage. (Docket No. 270.) Upon learning of this incident, Assistant Attorney General John R. Sweeney immediately notified the court of the error and arranged for Foley & Lardner to promptly reproduce and deliver copies, at GBCI's expense, of the seven boxes of legal materials. (Docket No. 271.)

Thereafter, the court held a hearing on Gidarisingh's motions for contempt and sanctions against GBCI personnel, at which Gidarisingh appeared by video-conference. (Docket No. 295.) With due regard for the inadvertent destruction of Gidarisingh's legal materials, the court granted Gidarisingh's motion for a 45-day extension of time to file his Rule 60(b) motion, ordering that the motion be filed by March 11, 2011. (Docket No. 295 at 2.) Instead of a motion or a memorandum of law, Gidarisingh filed a 135-page "declaration" with this court on March 14, 2011, along with twenty-seven exhibits.

(Docket Nos. 303-05.) Defendants filed a motion to strike Gidarisingh's declaration for violation of Civil Local Rule 7. (Docket No. 306.) However, the court denied the motion to strike, and found that Gidarisingh's declaration serves as his Rule 60(b) motion. (Docket No. 312.)

### Gidarisingh's Rule 60(b) Motion

Gidarisingh brings his motion pursuant to Rules 60(b)(3) and (6). First, he contends that his court-appointed *pro bono* attorneys committed malpractice that substantially prevented him from presenting an effective case at trial. Specifically, Gidarisingh charges that his attorneys were inexperienced, coerced him to sign a jury waiver form, failed to subpoena several individuals, failed to object to character evidence asserted against him, failed to cross-examine several defendants, failed to secure corroborative and impeachment evidence that defendants knew of Gidarisingh's participation in the Sanville lawsuit, failed to secure the trial transcripts to prevent him from appealing the case, and other things. (Pl.'s Mot. for Recon. at 6-34, ¶¶ 21-53.)

Next, Gidarisingh contends that defendants Millard, Pitzen, Kopfhamer, Schueler, Kingston, Clement, Roelke, Hart, Tomac, Kempfer, Douma, Becker, Buwalda, Nickel, and O'Donovan, as well as Nurse Paul Persson, testified falsely at trial. (*Id.* at 34-114, ¶¶ 54-125.) Consequently, he requests that they be charged criminally. (*Id.* at 127, ¶ 137.)

Gidarisingh further contends that the court failed to provide findings of facts regarding his retaliation claims against each defendant and state why it found his testimony and the testimony of his inmate witnesses incredible contrary to Fed. R. Civ., P. 52(a). (*Id.*

at 130, ¶ 139.) Additionally, he submits that Seventh Circuit Rule 50 was violated because the court did not consider all of the facts of his retaliation claim against each defendant so as to enable the court of appeals to review the reasoning underlying the judgment. (*Id.* at 130, ¶ 140). Gidarisingh goes on to asset the following errors:

> Judge Clevert relied upon the false testimony of defendant Millard that plaintiff "refused to comply with the strip search" and "threaten to kill the guards" to rule against plaintiff.
>
> Judge Clevert misapplied the excessive force law and facts of the case when Judge Clevert relied upon a memo address[ed] to the security staff that plaintiff never received, as all the defendants pertaining to the excessive force never served plaintiff a copy of the memo "about facing forward" dated 5-21-03. Judge Clevert relied upon this memo that was posted on the outside of plaintiff['s] solid steel door for the guards to read and not plaintiff, Judge Clevert['s] decision was bias[ed] and an abuse of discretion, because if plaintiff is required to face forward as according to this memo dated 5-22-03, then plaintiff is not allowed to turn his head to read a memo to his left, because plaintiff['s] cell door opens from right to left, furthermore plaintiff never received this memo and Judge Clevert went against the facts of the case of Case #04-C-38 to rule against plaintiff.
>
> Judge Clevert took 17 months to decide the trial of Case #04-C-38, from May 1, 2008 to Sept. 29, 2009 is a violation of Fed. R. Civ. P. 1 because Judge Clevert miss the facts of the case and failed to consider all the facts of plaintiff['s] case and made clear the conclusion of law and how he find the defendants all 15 of them credible and why he didn't find plaintiff's testimony and plaintiff's witnesses credible.
>
> Judge Clevert's decision on plaintiff's excessive force claim is against federal law, because Judge Clevert failed to understand that the evidence showed at the trial. Plaintiff was handcuffed behind the back, bullstrapped to his cell door and had iron leg shackles on his feet that plaintiff never verbally nor physical[ly] threaten any staff prior, during and the end of the physical assault, Judge Clevert's decision that "Pitzen reasonably perceived that plaintiff was a threat because plaintiff was a threat because plaintiff was on a 2-man escort

status, according to Pitzen, plaintiff turn plaintiff head and tensed his arm, moreover Douma's memo which was posted to the front of plaintiff's cell alert plaintiff that any resistance would be considered potentially assaultive . . ." This reasoning is against the facts presented at the trial of Case # 04-C-38 and the excessive force law throughout the federal courts and the cruel and unusual punishment. Plaintiff's injuries and pain was significant. Judge Clevert relied upon Nurse Persson['s] testimony which Nurse Persson testified "he does not recall plaintiff's injuries, bruises, knots in head and he didn't recall if he examined plaintiff head, ribs area. Judge Clevert's decision make it OK for correctional guards to attack and beat up shackled and fully restrain inmates who didn't threaten prison guards nor attempt to harm prison guard because these inmates are on a fabricated restriction or security precaution, and prison guards can make up delusional fear of an inmate stating that they feel "active tension" in an inmate['s] arm that is handcuffed behind their backs and made up target glance. Plaintiff was no threat to anyone on 6-18-03. Plaintiff was beaten up 2 days of the Sanville settlement for 1.8 million dollars (6-16-03) and the same day of that settlement was filed with the court (E.D. Wis.) on 6-18-03.

Judge Clevert failed to take judicial notice of the Sanville docket and settlement and case, Judge Clevert failed to form the causal link of the tie plaintiff got beaten up and the Sanville settlement on 6-16-03 and 6-18-03. Judge Clevert failed to consider that plaintiff was placed on this 2-man escort memo or restriction on May 21, 2003 due to defendant Tomac set plaintiff up and told plaintiff to hit the trap door open, which plaintiff did then plaintiff was set up on the defendant Tomac battery conduct report dated 5-21-03.

Plaintiff['s] retaliation, excessive force, and conspiracy claims including the humiliating strip search claims has merit. Judge Clevert['s] decision was bias[ed], where Judge Clevert abused his discretion throughout the decision plaintiff['s] trial, and violated Rule 52(a), has allowed the plaintiff['s] appointed attorneys to sabotage plaintiff's trial and has knowingly allowed the perjured testimony of the defendants in the trial of Case # 04-C-38.

Judge Clevert allowed the defendants' attorneys to sabotage plaintiff's attempt to file his Rule 60(b) motion by having Green Bay Correctional Institution staff to confiscate

> plaintiff's legal documents of Case # 04-C-38 including plaintiff's incomplete Rule 60(b) motion and evidence of Case # 04-C-38, then Judge Clevert allowed the defendants' Attorney John Sweeney to destroy all of plaintiff's legal documents of Case # 04-C-38. When plaintiff filed a TRO/preliminary injunction motion to Judge Clevert pursuant to Fed. R. Civ. P. 65, Judge Clevert took 3 months to decide plaintiff's TRO/preliminary injunction motion and allowed defendants' attorney John Sweeney and GBCI prison officials to intentionally destroy plaintiff's legal documents of Case # 04-C-38 and lock plaintiff up in segregation to prevent plaintiff from litigating his Rule 60(b) motion. Judge Clevert denied plaintiff's motion to supplement the trial record or for evidentiary hearing on plaintiff's Rule 60(b) motion. Judge Clevert denied plaintiff's motion for appointment of counsel to file plaintiff's Rule 60(b) motion that had merit. When plaintiff had appointment of counsel at the trial of Case #04-C-38 that abandoned plaintiff's post-trial motions, Judge Clevert allowed the defendants' attorney John Sweeney, and GBCI officials to confiscate plaintiff's segregation pen insert on January 31, 2011 and significantly impede plaintiff from properly litigating his Rule 60(b) motion as best as plaintiff can, this is the 3rd time defendants' Attorney John Sweeney and GBCI officials attempt to sabotage plaintiff's deadlines. Plaintiff requested an extension and Judge Clevert denied plaintiff's motion outright on 3-4-11 that plaintiff received on 3-8-11. Plaintiff objected to Judge Clevert's misconduct and John Sweeney causing plaintiff to no be able to finish Rule 60(b) motion to meet the 3-11-11 deadline.

(*Id.* at 131-135.)

## **Discussion**

Federal Rule of Civil Procedure 60(b) enables a court to grant relief from a judgment under the particular circumstances listed in the rule. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Those are:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic

> or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Relief under Rule 60(b) is an extraordinary remedy granted only in exceptional circumstances. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (quoting *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005)). In assessing whether relief is appropriate, the court must balance the competing policies of determining cases on their true merits against the desire to achieve finality in litigation. Wright, Miller & Kane, Federal Practice and Procedure § 2857 (2010). Relief under Rule 60(b) is "essentially equitable in nature and is to be administered upon equitable principles." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1208 (7th Cir. 1984) (citation omitted). Accordingly, a court has wide discretion in determining whether a case should be reinstated under Rule 60(b). *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (court's decision not to reinstate a case under Rule 60(b) is "discretion piled on discretion") (quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986)).

All motions under Rule 60(b) must be brought within a "reasonable time." Fed. R. Civ. P. 60(c). However, a motion brought under Rule 60(b)(1), (2), and (3) must be filed no later than one year after the disputed order was entered. *Id.* This time limit is jurisdictional; the district court may not extend the time to file a motion under Rule 60(b)(1), (2), or (3) beyond one year, even if the delay in filing was reasonable. *Brandon v. Chicago*

11

*Bd. of Educ.*, 143 F.3d 293, 296 (7th Cir. 1998) (affirming denial of relief under Rule 60(b)(1) where defendant filed a motion one year and three days after judgment was entered against him); *United States v. Deutsch*, 981 F.2d 299, 302 (7th Cir. 1992).

If a motion can be brought under Rule 60(b)(1), (2), or (3), a party may not use the "catchall" provision of Rule 60(b)(6) to avoid the one-year time limitation. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 393 (1993) (provisions for relief under Rule 60(b) are "mutually exclusive"); *Lowe v. McGraw-Hill Companies, Inc.*, 361 F.3d 335, 342 (7th Cir. 2004) (a party bringing a motion under Rule 60(b)(6) "mustn't be allowed to override the one-year limitation in Rules 60(b)(1), (2), and (3)"). Therefore, a court must first determine whether any of the alleged grounds fit within subsections (1), (2), or (3), before analyzing any remaining grounds under subsection (6). *Brandon*, 143 F.3d at 295-96.

As indicated, Gidarisingh brings his motion under Rules 60(b)(3) and (6). However, he filed the motion on March 14, 2011, more than one year after judgment was entered on September 29, 2009. The one-year time limit applies to his subsection (3) claim and the court does not have discretion to consider the motion under Rule 60(b)(3). Therefore, the court will focus on Gidarisingh's claim pursuant to Rule 60(b)(6).

Under the "catchall" provision of Rule 60, a district court may reopen a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). In accordance with subsection (6), the court may set aside a judgment, without limitation of time, when the circumstances of its invocation are "extraordinary." *Lowe*, 361 F.3d at 342 (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988); *Klapprott v.*

12

*United States*, 335 U.S. 601, 613 (1949) (plurality opinion)). In the typical "extraordinary" case, there is "no way the party seeking to set aside the judgment could have discovered the ground for doing so within a year of its entry." *Id.* (citing *Pioneer*, 507 U.S. at 393). Accordingly, relief is available under Rule 60(b)(6) only in "exceptional circumstances." *Helm v. Resolution Trust Corp.*, 84 F.3d 874, 877 (7th Cir. 1996) (citing *Williams v. Hatcher*, 890 F.2d 993, 995 (7th Cir. 1989)).

As an initial matter, the court will address the issue of whether Gidarisingh had time to file his Rule 60(b) motion within one year. It appears that several factors impact the approximate one and one half year delay in filing this motion: the question of whether Gidarisingh would file the motion at all, after filing his notice of appeal; the determination of whether Gidarisingh would file the motion *pro se*; the need to obtain the trial transcripts, after the court ordered they be provided at no charge; the inadvertent destruction - and subsequent replacement - of seven boxes of legal materials; and, regrettably, court delay. These factors lead the court to conclude that, in addressing Gidarisingh's motion, it should at least look to the Rule 60(b)(1)[1] and (3) standards, under the guise of Rule 60(b)(6). *See Lowe*, 361 F.3d at 342 ("[T]he purpose of a catch-all provision, as the term implies, is to avoid tying one's hands in advance, which a rule would do and only a loose standard would securely avoid doing."). Regardless, these delays did not prejudice Gidarisingh because he is not be entitled to relief under Rules 60(b)(1) or (3).

---

[1] Although Gidarisingh brought his motion under Rules 60(b)(3) and (6), his arguments as to the alleged malpractice of his court-appointed attorneys fall under Rule 60(b)(1), in addition to potentially subsection (6). The court looks to the substance of the motion rather than the form. *See United States v. Antonelli*, 371 F.3d 360, 361 (7th Cir. 2004).

### 1. Attorney Malpractice

Excusable attorney negligence may justify relief from judgment pursuant to Rule 60(b)(1). *See Helm*, 84 F.3d at 878; *see also Robb v. Norfolk & Western Ry.* Co., 122 F.3d 354, 357 (7th Cir. 1997). However, under Rule 60(b)(1), general attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant and regardless of the attorney's degree of culpability. *Easley v. Kirmsee,* 382 F.3d 693, 698 (7th Cir. 2004); *see also McCormick,* 230 F.3d at 327 ("neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)"); *United States v. 8136 S. Dobson St., Chicago, Ill.,* 125 F.3d 1076, 1084 (7th Cir. 1997) ("a client is bound by his chosen agent's deeds, whether it be negligence, gross negligence, or even willful conduct"); *but see Robb,* 122 F.3d at 361 (vacating a Rule 60(b)(1) denial because the district court believed it had no discretion to evaluate whether attorney negligence might be deemed excusable neglect). The burden to prove that the neglect was excusable is upon the party seeking relief from judgment. *Helm*, 84 F.3d at 878 (citation omitted).

Inexcusable attorney negligence, on the other hand, does not constitute proper grounds for relief under Rule 60(b)(1). *Id.* Nor is it available under Rule 60(b)(6), because inexcusable attorney negligence is not an exceptional circumstance justifying relief under subsection (6). *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) ("lawyer who inexcusably neglects his client's obligations does not present exceptional circumstances") (citing *Williams*, 890 F.2d at 996).

> Deception of a client becomes the liability of the client's attorney and not the client's opponent. *See Tolliver*, 786 F.2d

14

> at 319 ("Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common."). Since clients must be held accountable for their attorney's actions, it does not matter where the actions fall between "mere negligence" and "gross misconduct." *See 7108 West Grand Avenue*, 15 F.3d at 635. "Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary." *Id.* at 633. *See United States v. Di Mucci*, 879 F.2d 1488, 1496 (7th Cir. 1989) ("It seems clear to us that the law in this circuit is that an attorney's conduct must be imputed to his client in *any* context.") (emphasis in original).

*Bakery Machinery*, 570 F.3d at 848-49. Thus, Rule 60(b)(6) is unavailable when attorney negligence or other attorney misconduct is at issue. *Easley v. Kirmsee,* 382 F.3d 693, 699 n.5 (7th Cir. 2004) (missed deadline); *Pantoja v. Texas Gas & Transmission Corp.,* 890 F.2d 955, 960 (7th Cir. 1989) (conflict of interest).

In this case, Gidarisingh has many complaints about his attorneys. Although he mentions "inexperience" as one problem, most of his complaints to his counsel's alleged intentional interference, even sabotage, and deliberate mismanagement of his case. (Later, Gidarisingh faults the court for failing to require his trial attorneys to assist him in filing his Rule 60(b) motion.) These contentions do not fall under the category of "excusable neglect" where relief may be available under subsection (b)(1), but would be designated "inexcusable neglect." However, inexcusable neglect does not qualify as an exceptional circumstance under subsection (b)(6). Accordingly, Gidarisingh is not entitled to relief under Rule 60(b) based on alleged attorney malpractice.[2]

---

[2] As indicated, Foley & Lardner represented Gidarisingh at the request of the court. From its perspective, the court does not share Gidarisingh's opinion as to the quality of their representation.

**2. Fraud**

To obtain relief under Rule 60(b)(3) based on fraud, misrepresentation, or misconduct, a movant must prove that: "(1) the party maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial." *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir. 1995) (citation omitted). The requirements apply to intentional and unintentional misrepresentations. *Id.* However, the test does not require the court to determine whether the alleged misrepresentation altered the result of the case. *Id.* This is because Rule 60(b)(3) protects the fairness of the proceedings, but not necessarily the correctness of the verdict. *Id.* The moving party must prove it is entitled to a new trial by clear and convincing evidence. *Id.* Further, a court must weigh the finality of judgment against fundamental fairness in evaluating these requirements. *Id.*

In addition, acts of fraud on the court can sometimes constitute extraordinary circumstances meriting relief under Rule 60(b)(6). *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1104 (9th Cir. 2006) (citation omitted). Such fraud on the court "embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Id.* (quoting *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989)).

Gidarisingh asserts that various defendants testified falsely at trial and that the court relied on their perjured testimony in ruling for defendants. For example, he submits that defendant Millard committed perjury because he testified that he heard

Gidarisingh state to an officer, after being ordered to face forward, "I can face any way I want, man." (Tr. Trans. vol, 4, 386, April 29, 2008.) In a report regarding the June 18, 2003 incident, Millard stated that he heard Gidarisingh say, "Fuck you I don't have to do that." (Pl.'s Mot. for Recon. at 43, ¶ 63.) This alleged inconsistency, according to Gidarisingh, proves that defendant Millard perjured himself at trial. However, there is no evidence to establish that Millard was referring to the same statement by Gidarisingh.

Gidarisingh contends that defendant Pitzen committed fraud when he testified at trial that he "directed [plaintiff] to the wall." (Trial Tr. vol. 2, 197, April 28, 2008.) According to Gidarisingh, this statement is inconsistent with the incident report which states, "Officer Pitzen said that moment he felt inmate Gidarisingh tense up, he placed a forearm into the middle of inmate Gidarisingh's back and push[ed] him into the wall." (Pl.'s Mot. for Recon. at 47, ¶ 67.) However, while the statement from the incident report provides more detail, these statements are not inconsistent.

Another example of alleged fraud at trial is defendant Kopfhamer's testimony that when he arrived on the scene of the June 18, 2003 incident, Gidarisingh was "bent over almost to his knees." (Tr. Trans. vol. 4, 424, April 29, 2008.) Next, Kopfhamer testified that Gidarisingh was not flat on the ground and that he "reached in to grab the leg irons and pull him so he's laying flat out or kind of canted because of the bull strap." (*Id.*) Gidarisingh contends that the incident report indicates that, "Officer Kopfhamer said that he pulled inmate Gidarisingh's legs to pull his entire body away from the wall and then turned him on his belly." (Pl.'s Mot. for Recon. at 53, ¶ 72.) However, the court finds these statements to be consistent, and insufficient to demonstrate that Officer Kopfhamer gave perjured testimony.

Gidarisingh contends that defendant Schueler also committed perjury when he testified at trial that Gidarisingh was referred to administrative confinement due to his disciplinary history, which included battery and possession of weapons. (Tr. Trans. vol. 4, 442, April 29, 2008.) Although Gidarisingh acknowledges that he was found guilty of the battery as testified by Schueler, he maintains that he was set up, and he did not commit battery as charged. (Pl.'s Mot. for Recon. at 56, ¶ 76.) However, Gidarisingh's insistence that he was not guilty of these charges does not prove that Schueler committed perjury when he relied on the charges in recommending that Gidarisingh be placed in administrative confinement.

Gidarisingh submits that multiple defendants committed perjury when they testified to lacking information regarding his involvement in the Sanville case, and that the court failed to acknowledge that perjury. He contends that the court should have taken judicial notice of the dates of the Sanville settlement as well as the excessive force incident and inferred that the incident was retaliatory. Gidarisingh further contends that the court should have concluded that defendants were aware of his involvement in the Sanville case because of their positions within the institution. Regardless, based on the evidence presented at trial, the court determined that Gidarisingh failed to establish the defendants knew about his participation in the Sanville litigation. Even so, Gidarisingh's offering in support of the present motion failed to clearly establish that the acceptance of defendants' testimony on this issue was judicial error.

The court will not discuss each of Gidarisingh's fraud allegations. However, they are all similar in that Gidarisingh suggests inconsistencies in trial testimony where none exist. He contends that the defendants must have given perjured testimony simply

because he disagreed with it. Therefore, he has not presented clear and convincing evidence that any of the defendants perjured their testimony or committed fraud so as to entitle him to relief under Rules 60(b)(3) or (6).

**3. Trial Order**

Gidarisingh contends that the court failed to set forth its finding of facts specifying why the defendants were credible and why he and his inmate witnesses were not credible. However, the court's September 29, 2009, Decision and Order for Judgment constitutes its findings of facts and conclusions of law pursuant to Rule 52(a).

Gidarisingh does not cite to any law in support of his argument that the court was required to lay out specific facts as to credibility or incredibility of each witness. Moreover, the law of this circuit is to the contrary. *See Cartwright v. American Sav. & Loan Ass'n*, 880 F.2d 912, 921 (7th Cir. 1989) ("We are not persuaded that [Seventh Circuit precedent] requires a specific finding of credibility."); *Bechold v. IGW Systems, Inc.*, 817 F.2d 1282, 1286, n.2 (7th Cir. 1987) ("Where it is clear that the district court made a credibility determination in arriving at its findings of fact, we have treated such findings as tantamount to credibility determinations. We will not require a specific incantation when the basis of a finding is otherwise clear.").

In this case, the court found specifically that defendants were credible witnesses, and that they adequately presented legitimate, nonretaliatory reasons for their actions. Moreover, Gidarisingh has not presented clear and convincing evidence to the contrary nor has he established that defendants or the court committed acts that justify granting the extraordinary relief available under Rule 60(b).

## ADDITIONAL MATTER

Lastly, Gidarisingh seeks reconsideration of the court's March 18, 2011, order denying his request to receive a copy of his Rule 60(b) motion and exhibits so that he can serve them on defendants. The court denied the request because the defendants are able to access the documents by way of the court's electronic filing system, and that duplication and service of the documents would delay defendants' response. In his motion for reconsideration, Gidarisingh asserts that he now needs these documents to enable him to proceed with his appeal and that he has money in his release account to pay for copies. If that is so, these documents total 616 pages and he must prepay $61.67 to the clerk of court to obtain them. Therefore,

**IT IS ORDERED** that plaintiff's motion for relief pursuant to Rule 60(b) (Docket #303) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration (Docket #308) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 3rd day of June, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge